**TIDE-WATER PIPE COMPANY, Limited, Libelant-Appellee,**

v.

**THE CREST and Great Lakes Dredge & Dock Company, Claimant-Respondent-Appellant.**

**No. 285, Docket 25908.**

United States Court of Appeals Second Circuit.

Argued April 14, 1960.

Decided May 25, 1960.

490

Hagen, Johnson & Markey, New York City, Charles W. Hagen and Richard A. Hagen, New York City, of counsel, for claimant-respondent-appellant.

Pyne, Brush, Smith & Michelsen, New York City, Warner Pyne and Monroe J. Cahn, New York City, of counsel, for libelant-appellee.

Before SWAN, CLARK and FRIEND-LY, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal from a final decree in admiralty granting libelant-appellee recovery for damages resulting from the negligence of appellant-respondent in accidentally hooking on to and bringing to the surface appellee's 6-inch oil pipeline, which crossed the Arthur Kill between Bayway, New Jersey and Gulfport, Staten Island, during dredging operations conducted by appellant under a contract with the United States Army Engineers. The accident happened on June 20, 1949. The libel was filed in 1951 and came to trial in 1957 before Judge Walsh. In an oral decision Judge Walsh granted an interlocutory decree and appointed a Commissioner to assess libelant's damages. The Commissioner's report, which found the damages to be $53,365.79 plus interest, was confirmed by Judge Weinfeld on June 30, 1959, Judge Walsh having resigned in the meantime.

Appellant's brief asserts four errors of law and five "basic errors of fact." Its major contention is that Judge Walsh's findings of fact were clearly erroneous and cannot support the interlocutory decree which established appellant's liability. The issue turns upon the location of the pipeline and the dredge respectively, when the dredge picked up the pipeline. If these findings are supportable, the conclusions as to negligence cannot be, and as we understand the brief, are not, questioned by appellant.

In 1944 a trench 20 feet wide had been dredged in the channel to a depth of 44 feet below mean low water for the accommodation of the "Big Inch" war pipeline later acquired by Texas Eastern Transmission Company. In 1945 appellee was authorized by a permit issued by the War Department to install a 6-inch pipeline in the same trench. The pipeline was placed by drawing it across the Kill through the trench, and was located approximately midway between the north wall of the trench and the "Big Inch" pipeline in the center of the trench. The appellant questions whether the pipeline was in this position at the time of the accident, and asserts that the trial court "erred in assuming that appellee's pipeline had not moved without physical proof thereof." There was no direct evidence that its location had not changed, but Judge Walsh inferred that it had not from the fact that any considerable movement would have straightened the curves in the pipeline exposed on shore. There was testimony that such curves had not been disturbed prior to the acci-

dent. The trial court's inference that the location had not changed was certainly not clearly erroneous.

■ Most hotly disputed is the location of the dredge when it raised the pipeline to the surface, and the question whether contact with the pipeline occurred within the channel or on the slope west of the channel where the pipeline rose from the channel edge to the shore. Judge Walsh found that the pipeline was picked up 15 or 20 feet west of the west channel line. The dredge was making a cut to the north of the trench and toward the west end of the channel. Respondent contended that contact was made at the channel edge and that the port side of the dredge was 30 feet from the center of the trench, while the libelant asserted it was no more than 20 feet. The court found that the bow of the dredge was on the 2–3 line, which runs at an angle across the direction in which she was digging, and that she was working west of the 2–3 line into the slope at the time the accident occurred. The court rejected respondent's contention that the port side of the dredge was on the 30 north range.[1] In favor of respondent's contention was the fact that several of the witnesses who were aboard the dredge at the time of the accident placed her port side at range 30, i. e. 30 feet north of the centerline of the trench. Their testimony, however, was based on observations made after the pipeline was brought to the surface and Judge Walsh discredited it and accepted the libelant's location for reasons stated in his oral opinion. The location of the pipeline after it was dropped from the bucket of the dredge also appeared to favor the position claimed by respondent. The one indisputable fact was that the accident did occur. The court had to choose between the competing contentions as to where it occurred. We cannot hold his finding clearly erroneous.

■ The minor contests over subordinate facts seem unimportant, and the asserted four errors of law require little discussion. The first claims that the court failed to give effect to a judicial admission. Appellee's counsel admitted that the dredge was on the "Cut D Range," but this was not an admission that the port side of the dredge was 30 feet rather than 20 feet from the pipeline, which was what appellant's counsel was trying to bring out by cross examination, and neither party treated it as an admission of that disputed fact.

■ The second error of law claims that the rule of The Pennsylvania, 19 Wall. 125, 22 L.Ed. 148, should have been applied, since the permit required that appellee's pipeline be at a minimum depth within the channel of 42 feet below mean low water, and the court found that actually it was only 40 feet. The contention is without merit. Not only was the rule not called to the court's attention, but the variation from permit depth was proved not to have been a contributing cause of the pick-up of the pipeline outside the channel.

The two other asserted errors of law claim error in respect to damages. The arguments on this subject are sufficiently answered in the Commissioner's report and Judge Weinfeld's opinion.

Decree affirmed.

1. After the decision was announced, appellant's counsel requested a finding as to where the court "has located the port side of the dredge." The court replied that whether she was 10 feet farther north or 10 feet farther south made no difference. "If you ask me to go further, and this is a finding which I do not deem necessary, I would find that her port side would be about 13 feet north of the centerline of the trench, the outer limits of her port side." Appellant's brief charges that the 13-foot finding was erroneous, but as the court clearly stated it played no part in the decision.